1  KAREN P. HEWITT
   United States Attorney
2  PETER J. MAZZA
   Assistant United States Attorney
3  California Bar No. 239918
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7034

6  Attorneys for Plaintiff
   United States of America
7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,        )  Case No.  08CR0552-JM
                                    )
11              Plaintiff,          )  DATE:     April 23, 2008
                                    )  TIME:     11:00 a.m.
12      v.                          )
                                    )  GOVERNMENT'S RESPONSE TO
13 RAFAEL PEREZ-SALAS,              )  DEFENDANT'S MOTION FOR
                                    )  DISCOVERY AND FOR LEAVE TO
14                                  )  ADDITIONAL MOTIONS
                                    )
15              Defendant.          )
                                    )  TOGETHER WITH A STATEMENT
16                                  )  OF FACTS AND A MEMORANDUM
                                    )  OF POINTS AND AUTHORITIES
17                                  )  AND GOVERNMENT'S MOTIONS FOR:
                                    )
18                                  )  (1) RECIPROCAL DISCOVERY
                                    )  (2) FINGERPRINT EXEMPLARS
19 _____ )

20      COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and

21 through its counsel, Karen P. Hewitt, United States Attorney, and

22 Peter J. Mazza, Assistant United States Attorney, and hereby files

23 its response to Defendant RAFAEL PEREZ-SALAS's("Defendant")

24 motions to compel discovery and for leave to file additions

25 motions, as well as the Government's motions for reciprocal

26 discovery and fingerprint exemplars.  Said response is based upon

27 the files and records of this case, together with the attached

28

1  statement of facts and accompanying memorandum of points and

2  authorities.

3                                    I

4                        STATEMENT OF THE CASE

5       A.   THE CHARGE

6       On February 27, 2008, a grand jury sitting in the Southern

7  District of California returned a seven-count Indictment charging

8  Defendant with bringing in illegal aliens for financial gain;

9  bringing in illegal aliens without presentation; inducing and

10 encouraging illegal aliens to enter the United States; and

11 attempted reentry after deportation.  On March 4, 2008, Defendant

12 was arraigned on the Indictment.

13      B.   STATUS OF DISCOVERY

14      On March 13, 2008, the Government made approximately 176

15 pages of written discovery available to defendant.  On April 16,

16 2008, a dvd of Defendant's post-arrest statement as well as the

17 statement of the material witness from the February 16, 2008 was

18 also discovered to Defendant.  The documents, photographs, and

19 compact discs which have been produced constitute all discoverable

20 material that the Government has to date, and includes, inter

21 alia: (1)   investigative reports; (2) Defendant's criminal

22 history; (3) Defendant's post-arrest statement; (4) statements of

23 the material witnesses; and (5) photographs taken throughout the

24 investigation.

25 //

26 //

27

28                                    2

II

**STATEMENT OF FACTS**

A.   **March 14, 2007**

On March 14, 2007, at approximately 2:30 a.m., Defendant made application for admission into the United States from Mexico at the San Ysidro, California Port of Entry as the driver of a black 1990 Dodge Ram van bearing California license plate no. 5SQZ375. Defendant presented the Customs and Border Protection (CBP) Officer at Primary a Permanent Resident Alien card and a California Identification card in the name of Servando Rosales-Jaime.  Defendant informed the CBP officer that he was the owner of the vehicle.  The officer noticed Defendant shifting in the driver's seat as they spoke, as well as an apparent space discrepancy between in the roof of the vehicle.  The officer referred Defendant and the vehicle to secondary inspection.

At secondary, a CBP Canine Enforcment officer utilized a narcotics/human detector dog on Defendant's vehicle.  The canine alerted positively to the driver's side running boards.  Further inspection by the officers revealed a non-factory undercarriage compartment affixed to the bottom of the van.  Two undocumented aliens were extracted from the compartment.  Officers placed Defendant under arrest.

At approximately 8:19 a.m., CBP officers informed Defendant of his <u>Miranda</u> rights. Defendant waived those rights and agreed to speak with officers.  He stated that he bought the Permanent Resident Card from a man known to him only as "El Chino" for $300.

08cr0552-JM

Defendant claimed that El Chino offered him the van to drive into the United States.  Defendant stated that he was instructed to drive the van to Via San Ysidro once across the border and park it anywhere.  Defendant stated he picked up the van at approximately 1:00 a.m. the morning of his arrest.  Defendant denied knowledge of the aliens concealed in the undercarriage compartment.

**B.    November 11, 2008**

On November 11, 2008, Defendant made application for admission into the United States from Mexico at the San Ysidro, California Port of Entry as the driver of a blue 1994 Chevy Cavalier bearing California license no. 3GVF675.  Accompanying Defendant was an individual later identified as Alfredo Diaz-Perez.  Defendant presented an Permanent Resident Alien Card bearing the name Julian Marin Pulido.  The passenger, Diaz, presented a Permanent Resident Alien card in the name of Cristobal Lomeli-Anda.  The CBP officer at primary inspection took both occupants into custody, suspecting the use of fraudulent documents.

Following his arrest, Defendant was read his _Miranda_ rights, agreed to waive them, and spoke with officers.  Defendant stated that he met an individual he knew only as "El Toni" prior to the morning of his arrest.  Defendant admitted that El Toni was a known alien smuggler.  Defendant stated that El Toni agreed to smuggle Defendant into the United States if Defendant would drive a vehicle with a second illegal alien.  Defendant agreed to drive for a reduction in his smuggling fee from $4,000 to $1,500.  On

4

08cr0552-JM

the morning of his arrest, Defendant met El Toni at a previously agreed-upon location.  Defendant stated that upon arriving at the port of entry, both passengers presented documents not legally issued to them.  Defendant admitted to knowing it was illegal to do so.  Additionally, Defendant acknowledged he had no legal right to enter or remain in the United States.

C.    **February 16, 2008**

On February 16, 2008, at approximately 12:10 a.m., a 1987 Chevrolet van bearing California license no. 5YWL555 entered the United States from Mexico at the San Ysidro, California Port of Entry.  At primary, the vehicle and its occupants were referred to secondary based on a computer generated referral.

At secondary, the driver of the vehicle was later identified as Defendant.  A passenger was also present, an individual later identified as Hilda Aguilar-Ramirez.  At secondary, Defendant presented a valid United States Certificate of Naturalization bearing the name Ricardo Abita.  A photo of Defendant was affixed to the Certificate of Naturalization.  The passenger, Aguilar, presented a valid Permanent Resident Alien card in the name of Maria E. Ortega de Escoto, as well as a Nevada Instruction Permit bearing the same name, Ortega de Escoto.  Both occupants were arrested.

At approximately 3:45 a.m., Immigration and Customs Enforcement (ICE) agents advised Defendant of his Miranda rights.  Defendant agreed to waive his rights and speak with agents.  Defendant stated he is a citizen and native of Mexico, having been

08cr0552-JM

born in Tijuana, Mexico.  He stated further that he has no legal right to enter or remain in the United States.  He further admitted that he was aware it was against the law to enter the United States without proper documentation.  Defendant stated that he had met a man known to him as "Pepe" who provided him with the vehicle and Naturalization Certificate.  Defendant admitted that he further agreed to drive the vehicle with the Aguilar-Ramirez as a passenger for a discounted smuggling fee from $3,000 to $2,000.

CBP officers and ICE agents then interviewed Aguilar-Ramirez. She stated that she was a Mexican citizen and native without any legal right to enter or remain in the United States.  She stated that her husband made arrangements with a smuggler to have her smuggled into the United States for a fee, although she was not sure how much her family was going to pay.  She stated that as she approached the border with Defendant as the driver, he told her to give him her fraudulent documents in order to facilitate her illegal entry.  She stated that three unknown males who coordinated her illegal entry in Mexico had provided her with the documents.

**D.    Immigration History**

An immigration judge ordered Defendant deported from the United States to Mexico on April 30, 2001.  Defendant was most recently removed, prior to his apprehension on February 16, 2008, on November 6, 2007.  At that time, he was removed from the United States to Mexico.

//

### E.   Criminal History

A review of Defendant's criminal history indicates that he has three prior convictions: (1) April 15, 1996 battery (misd.); (2) October 9, 1997 possession of marijuana for sale (felony); and (3) January 3, 2000 possession of a controlled substance.

### III

### POINTS AND AUTHORITIES

### A.   DISCOVERY

In an attempt at simplification, this memorandum will address two specific areas of discovery:  (1) items which the Government either has provided or will voluntarily provide; and (2) items demanded and discussed by Defendant which go beyond the strictures of Rule 16 and are not discoverable.

#### 1.   Items Which The Government Has Already Provided Or Will Voluntarily Provide

a.   The Government will disclose to Defendant and make available for inspection, copying or photographing:  any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known to Defendant to be a Government agent.  The Government will also to Defendant the substance of any other relevant oral statement made by Defendant whether before or after arrest in

7

08cr0552-JM

1  response to interrogation by any person then known by Defendant to

2  be a Government agent if the Government intends to use that

3  statement at trial.

4          b.    The Government will permit Defendant to

5  inspect and copy or photograph books, papers, documents,

6  photographs, tangible objects, buildings or places, or copies or

7  portions thereof, which are within the possession, custody or

8  control of the Government, and which are material to the

9  preparation of Defendant's defense or are intended for use by the

10  Government as evidence during its case-in-chief at trial, or were

11  obtained from or belong to Defendant;[1/]

12          c.    The Government will permit Defendant to

13  inspect and copy or photograph any results or reports of physical

14  or mental examinations, and of scientific tests or experiments, or

15  copies thereof, which are in the possession, custody or control of

16  the Government, the existence of which is known, or by the

17  exercise of due diligence may become known, to the attorney for

18  the Government, and which are material to the preparation of his

19  defense or are intended for use by the Government as evidence

20  during its case-in-chief at trial;[2/]

---

22      1/    Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 116 S. Ct. 1480 (1996). Further, Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal. United States v. Givens, 767 F.2d 574 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

26      2/    The Government does not have "to disclose every single
(continued...)

08cr0552-JM

8

d.    The Government has furnished to Defendant a copy of his prior criminal record, which is within its possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government;

e.    The Government will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into;

f.    The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[3/]

---

(...continued)
piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519 (9th Cir. 1989), cert. denied, 493 U.S. 1088 (1990).

    3/    Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir.), cert. denied, 454 U.S. 902 (1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978), cert. denied, 440 U.S. 921 (1979); United States v. Walk, 533 F.2d 417, 418-419 (9th Cir. 1975). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

9

08cr0552-JM

1        g. The Government will disclose any record of

2    prior criminal convictions that could be used to impeach a

3    Government witness prior to any such witness' testimony;

4        h. The Government will disclose in advance of

5    trial the general nature of other crimes, wrongs, or acts of

6    Defendant that it intends to introduce at trial pursuant to Rule

7    404(b) of the Federal Rules of Evidence;

8        i. The Government acknowledges and recognizes its

9    continuing obligation to disclose exculpatory evidence and

10   discovery as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),

11   <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Jencks and Rules 12

12   and 16 of the Federal Rules of Criminal Procedure, and will abide

13   by their dictates.[4]

14      **2. <u>Items Which Go Beyond The Strictures Of Rule 16</u>**

15       **a. <u>The Requests By The Defendants For Specific</u>**
     **<u>Brady Information Or General Rule 16</u>**
16   **<u>Discovery Should Be Denied</u>**

17    Defendant requests that the Government disclose all evidence

18   favorable to him, which tends to exculpate him, or which may be

19   relevant to any possible defense or contention they might assert.

20

---

21     [4] <u>Brady v. Maryland</u> requires the Government to produce all

22   evidence that is material to either guilt or punishment. <u>Brady v.</u>
     <u>Maryland</u>, 373 U.S. 83 (1963). The Government's failure to provide

23   the information required by <u>Brady</u> is constitutional error only if
     the information is material, that is, only if there is a

24   reasonable probability that the result of the proceeding would
     have been different had the information been disclosed. <u>Kyles v.</u>

25   <u>Whitley</u>, 115 S. Ct. 1555 (1995). However, neither <u>Brady</u> nor Rule
     16 require the Government to disclose inculpatory information to

26   the defense. <u>United States v. Arias-Villanueva</u>, 998 F.2d 1491
     (9th Cir. 1993).

27

28

It is well-settled that prior to trial, the Government must provide a defendant in a criminal case with evidence that is both favorable to the accused and material to guilt or punishment. Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83, 87 (1963).   As the Court explained in United States v. Agurs, 427 U.S. 97, 104 (1976), "a fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial."   Thus, under Brady, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."   United States v. Bagley, 473 U.S. 667, 682 (1985) (emphasis added).   A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Pennsylvania v. Richie, 480 U.S. at 57 (quoting United States v. Bagley, 473 U.S. at 682).

The Supreme Court has repeatedly held that the Brady rule is not a rule of discovery; rather, it is a rule of fairness and is based upon the requirement of due process.   United States v. Bagley, 473 U.S. at 675, n. 6; Weatherford v. Bursey, 429 U.S. at 559; United States v. Agurs, 427 U.S. at 108.   The Supreme Court's analysis of the limited scope and purpose of the Brady rule, as set forth in the Bagley opinion, is worth quoting at length:

> Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted]. Thus, the prosecutor is not required to deliver his entire

08cr0552-JM

file to defense counsel,[5] but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial: "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and **absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial."**

United States v. Bagley, 473 U.S. at 675 (quoting United States v. Agurs, 427 U.S. at 108) (emphasis added); see also Pennsylvania v. Richie, 480 U.S. at 59 ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files."). Accordingly, the Government in this case will comply with the Brady mandate but rejects any affirmative duty to create or seek out evidence for the defense.

        **b.    Defendants' Motion For Disclosure Of Witness Information Should Be Denied Except As Is Agreed To By The Government**

Defendant seeks numerous records and information pertaining to potential Government witnesses. Regarding these individuals,

---

    [5]   See United States v. Agurs, 427 U.S. 97, 106 (1976); Moore v. Illinois, 408 U.S. 786, 795 (1972). See also California v. Trombetta, 467 U.S. 479, 488, n. 8 (1984). An interpretation of Brady to create a broad, constitutionally required right of discovery "would entirely alter the character and balance of our present system of criminal justice." Giles v. Maryland, 386 U.S. 66, 117 (1967) (Harlan, J., dissenting). Furthermore, a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgements.

08cr0552-JM

the Government will provide Defendant with the following items prior to any such individual's trial testimony:

(1)    The terms of all agreements (or any other inducements) it has made with cooperating witnesses, if they are entered into;

(2)    All relevant exculpatory evidence concerning the credibility or bias of Government witnesses as mandated by law; and,

(3)    Any record of prior criminal convictions that could be used to impeach a Government witness.

The Government opposes disclosure of rap sheet information of any Government witness prior to trial because of the prohibition contained in the Jencks Act.    See <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1074 (1977).    Furthermore, any uncharged prior misconduct attributable to Government witnesses, all promises made to and consideration given to witnesses by the Government, and all threats of prosecution made to witnesses by the Government will be disclosed if required by the doctrine of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 450 U.S. 150 (1972).

### c.    **The Rough Notes Of Our Agents**

Although the Government has no objection to Defendant's motion for the preservation of agents' handwritten notes, we object to their production at this time.    Further, the Government objects to any pretrial hearing concerning the production of rough

08cr0552-JM

1    notes.  If during any evidentiary proceeding, certain rough notes

2    become relevant, these notes will be made available.

3        Prior production of these notes is not necessary because they

4    are not "statements" within the meaning of the Jencks Act unless

5    they comprise both a substantially verbatim narrative of a

6    witness' assertions <u>and</u> they have been approved or adopted by the

7    witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir.

8    1980); <u>see also</u> <u>United States v. Kaiser</u>, 660 F.2d 724, 731-32

9    (9th Cir. 1981); <u>United States v. Griffin</u>, 659 F.2d 932, 936-38

10   (9th Cir. 1981).

11        **d.    Government Reports, Summaries, And Memoranda**

12        Rule 16, in pertinent part, provides:

13        [T]his rule does not authorize the discovery or
          inspection of reports, memoranda, or other internal
14        government documents made by the attorney for the
          government or <u>other government agent in connection with</u>
15        <u>the investigating or prosecuting of the case</u>.

16   Rule 16(a)(2); <u>see also</u> <u>United States v. Sklaroff</u>, 323 F. Supp.

17   296, 309 (S.D. Fla. 1971), and cases cited therein (emphasis

18   added); <u>United States v. Garrison</u>, 348 F. Supp. 1112, 1127-28

19   (E.D. La. 1972).

20        The Government, as expressed previously, recognizes and

21   embraces its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S.

22   83 (1963), <u>Giglio v. United States</u>, 450 U.S. 150 (1972), Rule 16,

23   and the Jencks Act.[6]  We shall not, however, turn over internal

24   _____

25        6/   Summaries of witness interviews conducted by Government
     agents (DEA 6, FBI 302) are not Jencks Act statements.  <u>United</u>
26   <u>States v. Claiborne</u>, 765 F.2d 784, 801 (9th Cir. 1985).  The
27                                                        (continued...)

28

memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[7]  Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

### e.    Defendants Are Not Entitled To Addresses And Phone Numbers Of Government Witnesses

Defendant requests the name and last known address of each prospective Government witness.  While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses.  See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980), and United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses).  A request for the home addresses of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list of the witnesses it expects to call at trial.  United States v. Thompson, 493 F.2d 305, 309 (9th Cir.), cert. denied, 419 U.S. 835 (1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969).[8]

---

(...continued)
production of witness interview is addressed in more detail below.

7/   The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

8/   Even in a capital case, the defendant is only entitled to receive a list of witnesses three days prior to commencement of
(continued...)

08cr0552-JM

1    The Ninth Circuit addressed this issue in <u>United States v.</u>

2  <u>Jones</u>, 612 F.2d 453 (9th Cir. 1979), <u>cert. denied</u>, 445 U.S. 966

3  (1980). In <u>Jones</u>, the court made it clear that, absent a showing

4  of necessity by the defense, there should be no pretrial

5  disclosure of the identity of Government witnesses. <u>Id.</u> at 455.

6  Several other Ninth Circuit cases have reached the same

7  conclusion. <u>See, e.g.</u>, <u>United States v. Armstrong</u>, 621 F.2d 951,

8  1954 (9th Cir. 1980); <u>United States v. Sukumolachan</u>, 610 F.2d at

9  687; <u>United States v. Paseur</u>, 501 F.2d 966, 972 (9th Cir. 1974)

10 ("A defendant is not entitled as a matter of right to the name and

11 address of any witness.").

12                    **f.    Motion Pursuant To Rule 12(d)**

13    Defendant is hereby notified that the Government intends to

14 use in its case-in-chief at trial all evidence which Defendant is

15 entitled to discover under Rule 16, subject to any relevant

16 limitations prescribed in Rule 16.

17 //

18 //

19 //

20

21    [8/](...continued)

22 trial.  18 U.S.C. § 3432.  <u>See</u> <u>also</u> <u>United States v. Richter</u>, 488
   F.2d 170 (9th Cir. 1973)(holding that defendant must make an

23 affirmative showing as to need and reasonableness of such
   discovery).  Likewise, agreements with witnesses need not be

24 turned over prior to the testimony of the witness, <u>United States</u>
   <u>v. Rinn</u>, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation

25 to turn over the criminal records of all witnesses.  <u>United States</u>
   <u>v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976); <u>United States v.</u>

26 <u>Egger</u>, 509 F.2d 745 (9th Cir.), <u>cert</u>. <u>denied</u>, 423 U.S. 842 (1975);

27 <u>United States v</u>. <u>Cosby</u>, 500 F.2d 405 (9th Cir. 1974).

                                                          08cr0552-JM

28                               16

1

        **g.    Defendant's Motion For Disclosure Of
           Oral Statements Made To Non-Government
           Witnesses Should Be Denied**

2

3      Defendants are not entitled to discovery of oral statements

4  made by them to persons who were not - at the time such statements

5  were made - known by the defendants to be Government agents.  The

6  plain language of Rule 16 supports this position.  Rule 16

7  unambiguously states that defendants are entitled to "written and

8  recorded" statements made by them.  The rule limits discovery of

9  oral statements to "that portion of any written record containing

10  the substance of any relevant oral statement made by the defendant

11  whether before or after arrest in response to interrogation by any

12  person then known to the defendant to be a Government agent," and

13  "the substance of any other relevant oral statement made by the

14  defendant whether before or after arrest in response to

15  interrogation by any person then known by the defendant to be a

16  Government agent if the Government intends to use that statement

17  at trial."  The statutory language clearly means that oral

18  statements are discoverable only in very limited circumstances,

19  and then, only when made to a known Government agent.

20        **h.    Personnel Files of Federal Agents**

21      Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir.

22  1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984),

23  the Government agrees to review the personnel files of its federal

24  law enforcement witnesses and to "disclose information favorable

25  to the defense that meets the appropriate standard of materiality

26  . . . ."  United States v. Cadet, 727 F.2d at 1467-68.  Further,

27

28                         17

08cr0552-JM

1    if counsel for the United States is uncertain about the

2    materiality of the information within its possession, the material

3    will be submitted to the court for in-camera inspection and

4    review.  In this case, the Government will ask the affected law

5    enforcement agency to conduct the reviews and report their

6    findings to the prosecutor assigned to the case.  In <u>United States</u>

7    <u>v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held

8    that the Assistant U.S. Attorney assigned to the prosecution of

9    the case has no duty to <u>personally</u> review the personnel files of

10   federal law enforcement witnesses.  In <u>Jennings</u>, the Ninth Circuit

11   found that the present Department of Justice procedures providing

12   for a review of federal law enforcement witness personnel files by

13   the agency maintaining them is sufficient compliance with

14   <u>Henthorn</u>.  <u>Jennings</u>, 960 F.2d at 1492.  In this case, the

15   Government will comply with the procedures as set forth in

16   <u>Jennings</u>.

17        Finally, the Government has no duty to examine the personnel

18   files of state and local officers because they are not within the

19   possession, custody or control of the Federal Government.  <u>United</u>

20   <u>States v. Dominquez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

21                    i.    **Reports Of Witness Interviews**

22        Defendant has requested the production of all reports

23   generated in connection with witness interviews.  To date, the

24   Government does not have any reports regarding witness interviews

25   or otherwise that have not been turned over to Defendant.

26   However, to the extent that such additional reports regarding

27

witness interviews are generated, the information sought by Defendant is not subject to discovery under the Jencks Act, 18 U.S.C., Section 3500.  In <u>Jencks v. United States</u>, 353 U.S. 657 (1957), the Supreme Court held that a criminal defendant had a due process right to inspect, for impeachment purposes, statements which had been made to government agents by government witnesses. Such statements were to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony, and if a demand had been made for specific statements of the witness.  <u>Id</u>. at 1013-15.  The Jencks Act, 18 U.S.C., Section 3500, was enacted in response to the Jencks decision.  As the Supreme Court stated in an early interpretation of the Jencks Act:

> Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative process and thereby injure the national interest, but it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations.  The committee reports of the Houses and the floor debates clearly manifest the intention to avoid these dangers by restricting the production to those statements defined in the bill.

<u>Palermo v. United States</u>, 360 U.S. 343, 350 (1959).  Having examined the legislative history and intent behind enactment of the Jencks Act, the Court concluded, "[t]he purpose of the Act, its fair reading and its overwhelming legislative history compel us to hold that statements of a government witness made to an agent of the government which cannot be produced under the terms of 18 U.S.C. § 3500, cannot be produced at all."

08cr0552-JM

Reports generated in connection with a witness's interview session are only subject to production under the Jencks Act if the witness signed the report, or otherwise adopted or approved the contents of the report.  See 18 U.S.C. § 3500(e)(1); see also United States v. Miller, 771 F.2d 1219, 1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witnesses' oral statements."); United States v. Friedman, 593 F.2d 109, 120 (9th Cir. 1979) (an interview report that contains a summary of a witness' statements is not subject to discovery under the Jencks Act); United States v. Augenblick, 393 U.S. 248, 354-44 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).  As recognized by the Supreme Court, "the [Jencks Act] was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital." Id.  The defendants should not be allowed access to reports which they cannot properly use to cross-examine the Government's witnesses.

08cr0552-JM

### j.    Expert Witnesses

The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

### k.    Other Discovery Requests

To the extent that the above does not answer all of Defendant's discovery requests, the Government opposes the motions on the grounds that there is no authority requiring us to provide such material.

## B.    LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not oppose Defendant's request for leave to file further motions.

## C.    GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

### 1.    RULE 16(b)

The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made

08cr0552-JM

in connection with this case, which are in the possession or control of Defendant, which Defendant intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness.  Because the United States has complied with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure.  The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

## 2.    RULE 26.2

Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant.  This rule thus provides for the reciprocal production of Jencks statements.

The time frame established by the rule requires the statement to be provided after the witness has testified.  To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

//

//

1

### D.    GOVERNMENT'S MOTION FOR FINGERPRINT EXEMPLARS

The Government requests that Defendant be ordered to make himself available for fingerprint exemplars at a time and place convenient to the Government's fingerprint expert. See United States v. Kloepper, 725 F. Supp. 638, 640 (D. Mass. 1989) (the District Court has "inherent authority" to order a defendant to provide handwriting exemplars, fingerprints, and palmprints). Since the fingerprint exemplars are sought for the sole purpose of proving Defendant's identity, rather for than investigatory purposes, the Fourth Amendment is not implicated. The Ninth Circuit in United States v. Ortiz-Hernandez, 427 F.3d 567, 576-79 (9th Cir. 2005), upheld the Government's ability to compel a defendant to submit to fingerprinting for purposes of identification at trial. See United States v. Garcia-Beltran, 389 F.3d 864, 866-68 (9th Cir. 2004) (citing United States v. Parga-Rosas, 238 F.3d 1209, 1215 (9th Cir. 2001)). Furthermore, an order requiring Defendant to provide fingerprint exemplars does not infringe on Defendant's Fifth Amendment rights. See Schmerber v. California, 384 U.S. 757, 770-71 (1966) (the Fifth Amendment privilege "offers no protection against compulsion to submit to fingerprinting"); Williams v. Schario, 93 F.3d 527, 529 (8th Cir. 1996) (the taking of fingerprints in the absence of Miranda warnings did not constitute testimonial incrimination as proscribed by the Fifth Amendment).

//

//

08cr0552-JM

1

## IV

2

## <u>CONCLUSION</u>

3      For the foregoing reasons, the Government requests that

4  Defendant's motions be denied where indicated and that the

5  Government's motions be granted.

6      DATED: April 16, 2008.

7                                    Respectfully submitted,

8                                    KAREN P. HEWITT
                                     United States Attorney

9
                                     s/ Peter J. Mazza
10                                   PETER J. MAZZA
                                     Assistant U.S. Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                                        08cr0552-JM
28                        24

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0552-JM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| RAFAEL PEREZ-SALAS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of a notice of appearance on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Leila Morgan, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 16, 2008.

s/ Peter J. Mazza
PETER J. MAZZA

08cr0552-JM