1  KAREN P. HEWITT
   United States Attorney
2  PETER J. MAZZA
   Assistant U.S. Attorney
3  California State Bar No. 239918
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-5528
   Peter.Mazza@usdoj.gov
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

8

9                    UNITED STATES DISTRICT COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11
   UNITED STATES OF AMERICA,    )   CASE NO.  08CR0552-JM
12                              )
                                )   DATE:     April 23, 2008
13          Plaintiff,           )   TIME:     11:00 p.m.
                                )
14                              )   STATEMENT OF FACTS AND MEMORANDUM OF
          v.                    )   POINTS AND AUTHORITIES IN SUPPORT OF
15                              )   GOVERNMENT'S MOTION FOR RECIPROCAL
                                )   DISCOVERY AND FINGERPRINT EXEMPLARS
16 RAFAEL PEREZ-SALAS,          )
                                )
17                              )
          Defendant.             )
18                              )
                                )
19

20      COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and
21 through its counsel, Karen P. Hewitt, United States Attorney, and
22 Peter J. Mazza, Assistant United States Attorney, and hereby files
23 its motions for reciprocal discovery and for fingerprint exemplars.
24 Said motions are based upon the files and records of this case,
25 together with the attached statement of facts and accompanying
26 memorandum of points and authorities.
27 //
28 //

**I**

**STATEMENT OF THE CASE**

**A.   THE CHARGE**

On February 27, 2008, a grand jury sitting in the Southern District of California returned a seven-count Indictment charging Defendant with bringing in illegal aliens for financial gain; bringing in illegal aliens without presentation; inducing and encouraging illegal aliens to enter the United States; and attempted reentry after deportation. On March 4, 2008, Defendant was arraigned on the Indictment.

**B.   STATUS OF DISCOVERY**

On March 13, 2008, the Government made approximately 176 pages of written discovery available to defendant. On April 16, 2008, a dvd of Defendant's post-arrest statement as well as the statement of the material witness from the February 16, 2008 was also discovered to Defendant. The documents, photographs, and compact discs which have been produced constitute all discoverable material that the Government has to date, and includes, <u>inter</u> <u>alia</u>: (1) investigative reports; (2) Defendant's criminal history; (3) Defendant's post-arrest statement; (4) statements of the material witnesses; and (5) photographs taken throughout the investigation.

**II**

**STATEMENT OF FACTS**

**A.   March 14, 2007**

On March 14, 2007, at approximately 2:30 a.m., Defendant made application for admission into the United States from Mexico at the San Ysidro, California Port of Entry as the driver of a black 1990 Dodge Ram van bearing California license plate no. 5SQZ375.

1  Defendant presented the Customs and Border Protection (CBP) Officer
2  at Primary a Permanent Resident Alien card and a California
3  Identification card in the name of Servando Rosales-Jaime. Defendant
4  informed the CBP officer that he was the owner of the vehicle. The
5  officer noticed Defendant shifting in the driver's seat as they
6  spoke, as well as an apparent space discrepancy between in the roof
7  of the vehicle. The officer referred Defendant and the vehicle to
8  secondary inspection.
9      At secondary, a CBP Canine Enforcment officer utilized a
10 narcotics/human detector dog on Defendant's vehicle. The canine
11 alerted positively to the driver's side running boards. Further
12 inspection by the officers revealed a non-factory undercarriage
13 compartment affixed to the bottom of the van. Two undocumented
14 aliens were extracted from the compartment. Officers placed
15 Defendant under arrest.
16     At approximately 8:19 a.m., CBP officers informed Defendant of
17 his <u>Miranda</u> rights. Defendant waived those rights and agreed to speak
18 with officers. He stated that he bought the Permanent Resident Card
19 from a man known to him only as "El Chino" for $300. Defendant
20 claimed that El Chino offered him the van to drive into the United
21 States. Defendant stated that he was instructed to drive the van to
22 Via San Ysidro once across the border and park it anywhere.
23 Defendant stated he picked up the van at approximately 1:00 a.m. the
24 morning of his arrest. Defendant denied knowledge of the aliens
25 concealed in the undercarriage compartment.
26 **B.   November 11, 2008**
27     On November 11, 2008, Defendant made application for admission
28 into the United States from Mexico at the San Ysidro, California Port

of Entry as the driver of a blue 1994 Chevy Cavalier bearing California license no. 3GVF675. Accompanying Defendant was an individual later identified as Alfredo Diaz-Perez. Defendant presented an Permanent Resident Alien Card bearing the name Julian Marin Pulido. The passenger, Diaz, presented a Permanent Resident Alien card in the name of Cristobal Lomeli-Anda. The CBP officer at primary inspection took both occupants into custody, suspecting the use of fraudulent documents.

Following his arrest, Defendant was read his <u>Miranda</u> rights, agreed to waive them, and spoke with officers. Defendant stated that he met an individual he knew only as "El Toni" prior to the morning of his arrest. Defendant admitted that El Toni was a known alien smuggler. Defendant stated that El Toni agreed to smuggle Defendant into the United States if Defendant would drive a vehicle with a second illegal alien. Defendant agreed to drive for a reduction in his smuggling fee from $4,000 to $1,500. On the morning of his arrest, Defendant met El Toni at a previously agreed-upon location. Defendant stated that upon arriving at the port of entry, both passengers presented documents not legally issued to them. Defendant admitted to knowing it was illegal to do so. Additionally, Defendant acknowledged he had no legal right to enter or remain in the United States.

**C.   February 16, 2008**

On February 16, 2008, at approximately 12:10 a.m., a 1987 Chevrolet van bearing California license no. 5YWL555 entered the United States from Mexico at the San Ysidro, California Port of Entry. At primary, the vehicle and its occupants were referred to secondary based on a computer generated referral.

At secondary, the driver of the vehicle was later identified as Defendant. A passenger was also present, an individual later identified as Hilda Aguilar-Ramirez. At secondary, Defendant presented a valid United States Certificate of Naturalization bearing the name Ricardo Abita. A photo of Defendant was affixed to the Certificate of Naturalization. The passenger, Aguilar, presented a valid Permanent Resident Alien card in the name of Maria E. Ortega de Escoto, as well as a Nevada Instruction Permit bearing the same name, Ortega de Escoto. Both occupants were arrested.

At approximately 3:45 a.m., Immigration and Customs Enforcement (ICE) agents advised Defendant of his <u>Miranda</u> rights. Defendant agreed to waive his rights and speak with agents. Defendant stated he is a citizen and native of Mexico, having been born in Tijuana, Mexico. He stated further that he has no legal right to enter or remain in the United States. He further admitted that he was aware it was against the law to enter the United States without proper documentation. Defendant stated that he had met a man known to him as "Pepe" who provided him with the vehicle and Naturalization Certificate. Defendant admitted that he further agreed to drive the vehicle with the Aguilar-Ramirez as a passenger for a discounted smuggling fee from $3,000 to $2,000.

CBP officers and ICE agents then interviewed Aguilar-Ramirez. She stated that she was a Mexican citizen and native without any legal right to enter or remain in the United States. She stated that her husband made arrangements with a smuggler to have her smuggled into the United States for a fee, although she was not sure how much her family was going to pay. She stated that as she approached the border with Defendant as the driver, he told her to give him her

5

fraudulent documents in order to facilitate her illegal entry. She stated that three unknown males who coordinated her illegal entry in Mexico had provided her with the documents.

**D.   Immigration History**

An immigration judge ordered Defendant deported from the United States to Mexico on April 30, 2001. Defendant was most recently removed, prior to his apprehension on February 16, 2008, on November 6, 2007. At that time, he was removed from the United States to Mexico.

**E.   Criminal History**

A review of Defendant's criminal history indicates that he has three prior convictions: (1) April 15, 1996 battery (misd.); (2) October 9, 1997 possession of marijuana for sale (felony); and (3) January 3, 2000 possession of a controlled substance.

### III

### GOVERNMENT'S MOTIONS

**A.   RECIPROCAL DISCOVERY**

**1.   RULE 16(b)**

The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in

connection with this case, which are in the possession or control of Defendant, which Defendant intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. Because the United States has complied with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

**2.  RULE 26.2**

Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of Jencks statements.

The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

**B.  Fingerprint Exemplars**

The Government requests that Defendant be ordered to make himself available for fingerprint exemplars at a time and place convenient to the Government's fingerprint expert. See United States v. Kloepper, 725 F. Supp. 638, 640 (D. Mass. 1989) (the District

1  Court has "inherent authority" to order a defendant to provide
2  handwriting exemplars, fingerprints, and palmprints). Since the
3  fingerprint exemplars are sought for the sole purpose of proving
4  Defendant's identity, rather for than investigatory purposes, the
5  Fourth Amendment is not implicated.  The Ninth Circuit in United
6  States v. Ortiz-Hernandez, 427 F.3d 567, 576-79 (9th Cir. 2005),
7  upheld the Government's ability to compel a defendant to submit to
8  fingerprinting for purposes of identification at trial.  See United
9  States v. Garcia-Beltran, 389 F.3d 864, 866-68 (9th Cir. 2004)
10 (citing United States v. Parga-Rosas, 238 F.3d 1209, 1215 (9th Cir.
11 2001)).  Furthermore, an order requiring Defendant to provide
12 fingerprint exemplars does not infringe on Defendant's Fifth
13 Amendment rights.  See Schmerber v. California, 384 U.S. 757, 770-71
14 (1966) (the Fifth Amendment privilege "offers no protection against
15 compulsion to submit to fingerprinting"); Williams v. Schario, 93
16 F.3d 527, 529  (8th Cir. 1996) (the taking of fingerprints in the
17 absence of Miranda warnings did not constitute testimonial
18 incrimination as proscribed by the Fifth Amendment).

**IV**

**CONCLUSION**

21    For the foregoing reasons, the United States requests that the
22 Government's Motions be granted.
23    DATED: April 17, 2008.

                                    Respectfully Submitted,

                                    KAREN P. HEWITT
                                    United States Attorney

                                    /s/ Peter J. Mazza
                                    PETER J. MAZZA
                                    Assistant U.S. Attorney
                                    Peter.Mazza@usdoj.gov

8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08CR0552-JM |
| Plaintiff, ) | |
| v. ) | CERTIFICATE OF SERVICE |
| RAFAEL PEREZ-SALAS, ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S NOTICE OF MOTIONS AND MOTIONS FOR RECIPROCAL DISCOVERY on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Leila Morgan

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 17, 2008.

/s/ Peter J. Mazza
PETER J. MAZZA

9